UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTINE P MADDEN,

      Plaintiff,

v.                                          Case No.:  2:19-cv-168-FtM-38MRM

NATIONAL LIFE INSURANCE
COMPANY,

      Defendant.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendant's Motion to Dismiss Amended Complaint (Doc. 19) filed on July 15, 2019. Plaintiff filed a Response in Opposition (Doc. 27) on August 12, 2019. For the reasons set forth below, the Motion is denied.

## **BACKGROUND**

This case involves a single claim for breach of contract in which Plaintiff Christine P. Madden[2], a retired chiropractor, alleges that her disability insurance company, National Life Insurance Company (National Life), improperly denied her total disability benefits due under a disability insurance policy. The Court recounts the factual background as pled in

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] During most of the time the events in this case occurred, Plaintiff's name was Christine P. Glavey.

Plaintiff's Amended Complaint, which it must take as true to decide whether the Amended Complaint states a plausible claim. See *Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

Madden, while living in Georgia, purchased an individual disability income insurance policy from National Life, Policy No. D2163414, effective January 14, 1991 (the Policy). (Doc. 8 at ¶ 8; Doc. 8-1). The Policy provides a monthly benefit if Madden becomes totally disabled from her occupation. (Doc. 8 at ¶ 9).

Prior to her disability, Madden was a dermatologist operating her practice near Atlanta, Georgia. (Doc. 8 at ¶ 13). She suffers from cervical disc disease and torticollis, which causes her head to tilt and turn to the left, as well as muscle spasms and pain in her neck. (Doc. 8 at ¶ 14). Madden had surgery for her condition in 2013 and as of March 19, 2013, she was unable to return to her dermatology practice. (Doc. 8 at ¶ 17). It is on this date that Plaintiff alleges she became totally disabled under the terms of the Policy.

Madden reported her disability to National Life on April 15, 2013, when she spoke to a National Life representative. As a result of that conversation, Madden understood that she would not be eligible for benefits under the Policy. (Doc. 8 at ¶ 19). That same day, National Life sent Plaintiff a letter enclosing forms to be completed for her disability claim. (Doc. 8 at ¶ 20). Madden did not receive the claim forms, nor would she have completed them, since she had been advised by National Life that her claim would not be viable. (Doc. 8 at ¶ 21).

On or about June 26, 2013, Madden wrote to National Life requesting cancellation of the Policy, as she did not want to continue paying premiums for ineffective coverage. The Policy states that the termination became effective on July 14, 2013. (Doc. 8-1).

Madden had no reason to abandon her claim at that time if she believed it was viable, since she was still disabled and expected that her condition was permanent. (Doc. 8 at ¶ 22).

In early 2015, Madden contacted National Life to request a copy of her Policy so she could determine whether to renew her disability claim, but National Life did not provide it. (Doc. 8 at ¶ 23). In November 2015, after several exchanges, National Life agreed to reopen Madden's claim but still failed to produce a copy of the Policy. (Doc. 8 at ¶ 24). On or about February 29, 2016, National Life produced a copy of the Policy to Madden's counsel. (Doc. 8 at ¶ 25).

Madden resubmitted her claim to National Union on or about February 7, 2017 which National Union denied on or about July 24, 2017. (Doc. 8 at ¶¶ 26-27). Madden submitted an appeal to National Life on October 30, 2018 after gathering and preparing information to respond to the concerns raised in National Life's denial letter. (Doc. 8 at ¶ 28). National Life has upheld its decision. (Doc. 8 at ¶¶ 29-31).

National Life moves to dismiss for failure to state a claim, arguing that because Plaintiff breached the contract herself, she cannot recover, and that Plaintiff's claims are implausible.

## STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This consideration is limited "to the pleadings and exhibits attached thereto[.]" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, a complaint listing

3

mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2008). Likewise, "[f]actual allegations that are merely consistent with a defendant's liability" are insufficient. *Chaparro v. Carnival Corp*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). And the allegations must not force the court to speculate or operate on mere suspicion. *Twombly*, 550 U.S. at 555. In contrast, the Court will not dismiss a complaint where the Plaintiff pleads facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when the court can draw a reasonable inference, based on the facts pleaded, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). Thus, when the complaint contains "well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

### A. Choice of Law

As an initial matter, National Life states that the Court must first determine which state's law applies to this contract dispute. Defendant asserts that Georgia law applies since Plaintiff lived in Georgia when she entered the insurance contract, and Plaintiff does not seem to dispute this point.

Federal courts sitting in diversity apply the conflict-of-laws rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir .2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

When dealing with choice-of-law issues related to a contractual agreement, Florida's choice-of-law rules apply the doctrine of *lex loci contractus*. *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091 (11th Cir. 2004) (citing *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1236 (11th Cir. 1995)). Under this doctrine, "'the laws of the jurisdiction where the contract was executed govern[ ] interpretation of the substantive issues regarding the contract.'" *Id.* at 1091 n.1 (quoting *Lumbermens Mut. Cas. Co. v. August*, 530 So .2d 293, 295 (Fla. 1988)).

Here, the Amended Complaint alleges that the contract at issue was entered into while Plaintiff resided in Georgia. Therefore, the Court finds that at this stage in the litigation the case is governed by Georgia law.

**B. Breach of Contract**

Defendant argues that based on Madden's allegations in the Amended Complaint, she admittedly breached certain provisions of the insurance contract by failing to provide material information required by the insurer, and therefore she is barred from recovery on her claim against National Life. Specifically, that Plaintiff did not give written notice of her claim within 30 days, did not complete the claim forms or give written proof of the nature and extent of her disabilities within 90 days, and shortly after the onset of her alleged disability, she cancelled her Policy, all in breach of the provisions at page 12 of the Policy (Doc. 8-1). Plaintiff responds that her delay is excused by National Life's representations that no coverage was available to her under the Policy. In addition, she alleges that she did not receive National Life's request for information, and would not have submitted it at that time, believing that any further effort would be futile because National Life told her she had no viable claim.

5

Under Georgia law, "an insured is required to provide any material information to the insurer that the insurer is entitled to receive under the insurance policy, and a failure to provide the requested information, absent an excusable failure to do so, constitutes a breach of the insurance contract that bars recovery by the insured." *R&G Investments & Holdings, LLC v. Am. Family Ins. Co.*, 787 S.E.2d 765, 773 (2016) (internal quotations omitted) (quoting *Hines v. State Farm Fire & Cas. Co.*, 815 F.2d 648, 651 (11th Cir. 1987). Further, Georgia law provides that "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." Ga. Code Ann. § 13-4-23. "[I]f there are factual questions regarding the degree of the insured's compliance with the insurer's request for information or the reasonableness of the insured's explanation for noncompliance, a jury must resolve whether the insured sufficiently cooperated with the insurer's request." *R&G Investments*, 787 S.E.2d at 773.

In this case, there are clearly questions of fact that preclude the Court from finding as a matter of law based on the allegations in the Amended Complaint that Plaintiff breached the insurance contract. The issue of Madden's cooperation with National Life's claims investigation is a factual issue that is premature at the motion to dismiss stage and if Madden failed to timely notify National Life of her disability, it could be that such a failure was excused under the circumstances. *See Lathem v. Sentry Ins. Co.*, 845 F.2d 914, 918 (11th Cir. 1988). The details of which will come to light in discovery.

Defendant also argues that Plaintiff is not entitled to any benefits for the time period commencing one year prior to the submission of the claim and proof of loss documents because she voluntarily terminated the insurance contract in 2013. However, Madden

alleges that the Policy was in effect when she first contacted National Life to make a disability claim in April 2013, and she only cancelled the Policy after she was induced by National Life to abandon her claim.

### C. Plausibility

Lastly, Defendant argues that Plaintiff's allegations are implausible. Specifically, Defendant asserts that it is implausible that an insurance carrier, governed by the myriad of statutes and regulations applicable to the industry, would allow a customer service representative to tell an insured that there was no coverage for the claim during an initial phone call, then send out claim forms for the insured to complete. And Defendant believes it is implausible that Plaintiff, a highly educated medical doctor, would blindly accept what she claims she was told during the initial call and make no further efforts to confirm it. However, the Court disagrees and finds that the allegations are plausible, and Defendant's argument go more towards Plaintiff's credibility and Defendant's perceived weaknesses of the case rather than plausibility.

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion to Dismiss Amended Complaint (Doc. 19) is **DENIED**.

(2) Defendant shall file an Answer to the Amended Complaint by **September 13, 2019**.

**DONE** and **ORDERED** in Fort Myers, Florida this 30th day of August, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record